Mr. Tan moved the Board of Immigration Appeals to reopen his case to present three pieces of evidence that were not available at the time of his immigration proceedings. The three pieces of evidence are that he is gay and suffered past persecution on account of his sexual orientation and that he fears returning to Indonesia on account of his sexual orientation. The second piece of evidence is that he was raped on account of his sexual orientation. And the third piece of evidence is a psychological evaluation. And there are three reasons why he failed. The third piece is what? It's a psychological evaluation that was required and asked for by the immigration judge and that his attorney, without any explanation, failed to submit, in which Mr. Tan submitted with his motion to reopen and has asked the Board of Immigration Appeals to reopen so that that psychological evaluation can be considered as part of his case. There were three reasons why he failed to submit this evidence. The first is that his prior counsel advised him not to tell the immigration court that he was gay. Mr. Tan had a conversation with Mr. Wong, and Mr. Wong said, I know you're gay. However, when Tan asked whether he should provide this evidence in court, Wong told him not to. When do you understand that that conversation took place? That conversation, according to Mr. Tan in his declaration, took place one week before the final deportation hearing in April of 2001. And it certainly did arise late in the game. However, it arose before the final deportation proceeding, and it could easily have been presented with evidence as to why it was being presented. So late in the proceeding. He never told counsel that he had been persecuted because he was gay, though, did he? Well, he was never asked whether he was ever persecuted. Well, I understand. The point is, according to counsel, he doesn't recall that he ever told him at all that he was gay, particularly. Now, the BIA, if I understand it, says, look, we've looked at the affidavit. Now, this is what we're talking about. We're not talking about the merits of some kind of case. BIA says, look, our requirement is you give an affidavit, counsel gives an affidavit. We've looked at them. We look at this whole record. We look at what went on. We look at what counsel says, and we look at what you say, and we don't believe you. We think that you probably didn't mention you were gay, and surely he never mentioned that he was being persecuted. Isn't that correct? Well, looking at the Board of Immigration Appeals' decision, I think it's really important to look at the decision because I'm not sure that the BIA did all of that. I mean, their first finding of fact is erroneous because their first finding of fact is that it says Mr. Tan told his attorney that he was gay and he was persecuted on account of his sexual orientation, and that's nowhere in the record. And then the Board of Immigration Appeals goes on to say, and Mr. Wong, who has absolutely no recollection of whatever occurred in his four years of representation, says that, you know, had Tan told him, of course he would have advised him. And then it goes on to say, we find nothing in the record to support Tan's assertions, essentially, that he told his counsel that he was gay, but Tan never even made that assertion. So one of the errors of the Board of Immigration Appeals is that its entire factual basis of the decision is completely flawed, and this Court has held that when their decision is so completely flawed, you can't even rely on it. And that's what I would argue in this case, is that their factual basis is completely flawed, and the premise of their finding no ineffective assistance of counsel is completely flawed, because essentially they find no ineffective assistance of counsel because they say that we find nothing in the record to show that Tan told his attorney, the immigration court, or the asylum unit that he was gay. And we don't dispute that. That is actually totally true. The question is, though, whether his attorney, whether there was a conversation between his attorney and Tan. And what we have here is we have Tan's detailed declaration where he has a specific memory of what occurred throughout that four years of representation, and what we have from Wong is a two-paragraph speculation about what occurred, and no explanation of that. Also, nevertheless, wasn't the BIA entitled to make a credibility determination as to which version it believed? I believe it's entitled to make an explicit credibility determination. In this case, I believe they made an implicit credibility determination, and they did not provide Tan an opportunity. I say that they But what case are you relying upon to support your argument that in the context of a motion to reopen, the person seeking reopening has to be given the opportunity to rebut any implicit adverse credibility determination? What case are you relying upon for that argument? I would say Ordonez is the strongest case on that issue. But that's not a motion to reopen. It was a motion to reopen, Your Honor. There was a motion to reopen to provide evidence that occurred after the proceedings. And what the board did in that case is that they said that they thought some of that evidence was discoverable prior to, and therefore, they didn't believe the evidence that he was trying to submit. But wasn't that an uncontroverted declaration that we were looking at in that case? Yes, Your Honor. And there's also you're right, Your Honor, but it was still the same concept of an implicit credibility finding. I would say the Lynn case is the best example of when there were two declarations. There was a declaration by the applicant, and there was a declaration by the attorney refuting everything. And in that case, they made a decision to remand to make a determination. We said in Lynn, I thought we said in Lynn, that we weren't impressed with what the attorney said, what we said. Right, exactly. Right. And so we remanded for them to make a decision. They made a decision here. They say that he asserts this stuff about his homosexuality. We don't think he ever told his lawyer that. And that's true. He never did tell his lawyer that he was attacked because of his homosexuality. So he never put to his lawyer that there was any problem there of that nature. And so they say we don't think Consul was ineffective on that basis. I don't quite understand how we can say, oh, no, Consul was ineffective when he never even raised it. Even in criminal cases, we say, you know, if you don't tell your attorney about a witness, for example, the attorney doesn't have to dream them up out of the clear blue sky. I see the Wiggins case as saying that, and the Lynn case, applying it to the immigration context, saying that there is a duty to investigate your claim. And all of the Ninth Circuit's cases say that an applicant who is unaware of their claim relies on an immigration attorney to advise them of the possible options that are available to them. And Tan explains in his declaration that he went to Mr. Wong with the intention of learning his options and applying for relief and ability to stay in the United States, and that Wong failed even at the initial meeting to do any investigation, to even ask the simple question, are you afraid to return to Indonesia? And if so, why? On what basis? Throughout three and a half years of representation, Wong never asked Tan, tell me why you are afraid to return to your home country. And in this case, I think it's stronger than other cases, because there is so much evidence that shows that there was a relationship between Mr. Tan and Howard. Mr. Tan showed up at almost every hearing with his attorney, with his partner, Howard. Plus, there was the psychological evaluation that said Mr. Tan is gay. So his attorney was on notice. There was constructive notice. Even if you don't believe that Tan had this conversation, he was on constructive notice that his client was gay. And there's no evidence. Anyway, he was on constructive notice that his client was gay. So the assumption is that any gay, any person who turned out to be gay is going to be persecuted? No, of course not. But I think the duty has the, the attorney has the duty to investigate. The attorney has to say to him, were you persecuted because you were gay? The attorney has to say that, is that right? The attorney, I would like to reserve a couple minutes for rebuttal, but the attorney has a duty to advise. When the attorney has the knowledge and knows the basis for asylum, the attorney has, at a minimum, a duty to advise the client, if you are gay and you fear of returning to your home country because of persecution based on being gay, you might have a basis for asylum. At that point, if he doesn't come forward and say he's gay, there might not be further duty to investigate. But at a minimum, knowing that he was gay, he had a duty to advise him. Should I save the balance of your time? Thank you. Good morning. Since the petitioner's counsel has addressed the motion to reopen, I'll start off with the motion to reopen issue. In this case, our position is that the board properly denied petitioner's motion to reopen and should defer to the board's decision under the deferential abuse of discretion standard. First, I would note that it is our position that petitioner here does not have a constitutional right to counsel in immigration proceedings because they are civil in nature, not criminal, so the Sixth Amendment right does not apply in civil cases, and the Supreme Court stated in Coleman v. Thompson that the due process clause generally has no application where counsel is privately retained, as here.  In a criminal case, he could not have been deprived of a due process right to effective assistance. Well, we've said in a number of cases that, you know, there may not be a constitutional right to a due process right to an attorney in deportation matters, but by statute, there is a right to have an attorney if they want one. And if the attorney is so ineffective to deny an alien a fundamental – his right to a fundamentally fair hearing, it's denial of effect – you know, it's a denial of due process. Well, the – He walks and it quacks a lot like a due process argument. Right. The – Let me ask, is it proper for the board when there's a factual dispute, as here, between the lawyer and the alien, is it proper for the board to resolve that factual dispute? Well – Or is the board required just to take the version of the events given by the alien? I do not think the board, in this case, resolved the factual dispute. I think they were just – Then what did it do? They based their decision on what was presented before them. They looked at the declaration of petitioner. They looked at Mr. Wong's affidavit or declaration and based their decision on that evidence. I don't think they specifically said, well, you're not telling the truth, and you are. I don't think it was like that. But didn't the board have to choose one version of events? Either they had to believe the declaration of the petitioner or the declaration of the attorney in order to resolve the factual dispute? I don't think it was necessary for them to dispute one or the other in order to make the ultimate determination, in this case, which is, assuming we go past the constitutional issue, whether or not Mr. Wong deprived petitioner of his right to effective assistance to the counsel. Because in this case, the petitioner's attorney reasonably – Mr. Wong, I would say, has a reliance upon the information provided to him by the petitioner. Not according to the petitioner's affidavit. Well, according to the petitioner, he does not dispute or he does not claim that he told Mr. Wong, his prior attorney, that he was persecuted on account of his sexual orientation. I think that's critical. But what we have, if I understand it, is the petitioner, until the nth hour, doesn't even tell him he's gay. Right. But he never tells him that he was subjected to any persecution because he was gay. That's correct. That's taking his affidavit for all it's worth, correct? Right. And I don't think the board was – And that's what the board said. Correct. Right. I don't think the board was indicating that the petitioner was not being truthful or that Mr. Wong was being truthful or vice versa. I think the board was basically saying, based on the information provided here, assuming – taking petitioner's affidavit for what it's worth, and based on what he's conceded, that he never told Mr. Wong that he was persecuted on account of his sexual orientation, specifically that basis. Under those circumstances, the board could not have found that Mr. Wong deprived him of effective assistance of counsel. It's important to remember in this case that in his original asylum claim, the petitioner was alleging persecution not on account of his sexual orientation but on account of his Chinese ethnicity and possibly religion. That was the thrust of his claim, of his underlying claim. And in this case, he never told Wong that he was gay during the preparation of this asylum claim. As this Court has noted, it was at the nth hour. And Mr. Wong indicated that he did not remember being told at any time that petitioner was gay. Counsel, are you saying that if an attorney is told something late in the game, that the attorney has no obligation to follow up on that? No, not necessarily. I'm just saying that in this case, he wasn't told – he was told late in the – and these were not – this was not just in the course of a month. This was – I believe this was in the course of several hearings. But just because he was told, let's just assume that – let's say he was – Mr. Wong found out that he was gay, that in and of itself did not require him to – that does not show an effective assistance of counsel because Mr. – because petitioner did not tell him that he was – presented a claim of sexual orientation persecution. As I stated, his claim, the thrust of his claim was persecution on account of his Chinese ethnicity. It's a very different claim. So it was not unreasonable for Mr. Wong to pursue a claim, an ethnicity-based persecution claim, rather than a sexual orientation-based persecution claim. How about the motion to reopen? What's your position on the decision on the motion to reopen? Well, our position is that the board properly denied it because the petitioner has not established an effective assistance of counsel. He's not established that Mr. Wong deprived him of any effective assistance. He had ample opportunity to present his claim. I would also note, I think it's important to note on the record, he did appear before an asylum officer before he appeared before an immigration judge. And there is no indication that before the asylum officer, he expressly indicated that he was gay or that he was persecuted on account of his sexual orientation. The critical thing here is that Mr. Wong reasonably presented Mr. Tan's claim in reliance upon the information presented to him by petitioner. There's just not – as the board found, there's no evidence that he's ever told Wong, the asylum officer or the immigration judge at the hearings, either of the hearings that he was attacked specifically because of his sexual orientation as opposed to persecution on account of his Chinese ethnicity, and which now leads to the first petition for review. And if this Court has any questions concerning his underlying asylum eligibility, I would be happy to answer them. What about the immigration judge asking the attorney to attain a psychiatric evaluation and the attorney's failure to do that? What's your response to opposing counsel's argument that that was ineffective assistance because that would have brought out all of the evidence regarding the rape and the persecution? I believe he did obtain a report. He presented – I think it was at the last hearing he presented a report. Where is that in the record? I thought the attorney just told the judge what he thought the effect of the report was, but no report was ever entered into evidence. When I looked at this case, I recall that there was some type of a report. It may not have been entered into evidence, but it was considered. I believe the immigration judge considered it, if I'm not mistaken. The report – Could you point to me in the record where the immigration judge considered the report? It's – okay, I'm looking at the immigration judge's decision of April 27, 2001. And on the bottom of page 4 – What's said in the record? What – that's – I don't have the specific – Where the immigration judge indicates that they were shown the medical reports relating to his – Page 342, I think. Okay. And I'll just read from there. The court, referring to the immigration judge, and the government were shown the medical reports relating to this incident, but they were not offered in evidence in the course of the proceeding. That's a little different than a psychiatric report, a medical report. I thought the immigration judge asked for a psychiatric report. That's true. I do not know if this is the same report or a similar report, but something was submitted. It was not offered into evidence, but it was taken into consideration. The immigration judge did not have to take it into consideration, but generously did. And the immigration judge noted, having read the documents, this respondent may have had some sort of psychological problem in the past, so it was considered his psychological problems long before the riots of May of 1998 involving hallucinations. Well, what happened, the answer, I suppose, is that what happened was they knew there was an emergency room visit and reports were made at the visit, and the judge said, get those reports. And that's what was submitted at the hearing, was the records of the emergency room visit including the reports made at that visit. That's correct. But those reports don't establish ineffective assistance on part of Mr. Wong. They don't establish, and the evidence does not, that evidence does not sufficiently establish that he was persecuted on account of sexual orientation. It shows that he may have suffered some psychological problems. Those reports were not entered into the record, though, were they? They were not what? Entered into the record. They were not. They were not, right, submitted as evidence, but they were considered. And as I noted, the immigration judge did not have to consider them, but generously did. So in sum, the board's, this Court should accord deference to the board's motion to reopen and should also affirm the board's, the immigration judge's original decision, denying his Assam claim based on ethnicity-based persecution. Again, not based on sexual orientation persecution. That was not raised. Right.  Thank you. Thank you very much, counsel. The psychological report is critical because in the I.J.'s decision, the I.J. said specifically, the problem in this particular case is that we do not have concrete medical evidence in terms of an expert opinion as to respond to this current psychological condition. And so I would say that this, that the I.J. denied this case in part or perhaps totally because he did not have the medical report, the psychological evaluation. He gave Wong a year and a half to obtain this psychological evaluation. Wong went back to that court with the report, not an evaluation, just the hospital reports. He gave them to the judge. He took them back. And he said, Your Honor, I will make, I will give you my opinion of these reports. And the judge said, clearly, your opinion is not expert testimony. And then he went on to say, well, we don't really think that his psychological state has anything to do with this case in any case. There's a direct quote from the attorney saying, we don't think his psychological state has anything to do with this case. And then, and he totally contradicted Tan's own testimony, which said that it was the May 1998 riots that triggered all this memory of this attack, which triggered the suicide attempt. So he contradicted his own client. And the problem in this case is that the BIA failed to even consider this argument. And the BIA is required, based on Ordonez and other cases, to consider all the arguments before it. And the other argument that the BIA failed to consider was the post-traumatic stress disorder. The psychological evaluation shows that Tan suffered from severe post-traumatic stress disorder, coupled with, well, whether you believe the advice of the attorney or not, that in and of itself affected his ability to come forth with a rape. And that is what he's asking for, is an opportunity to present this evidence to the immigration judge. Thank you. Thank you. The matter will stand submitted. The next case on today's argument calendar is United States.
judges: Fernandez, Paez, Rawlinson